```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/14/12
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------

CESAR MATEO,

                Plaintiff,

    -against-

T. ALEXANDER, CORRECTION SERGEANT,
and J. ERNS, CORRECTION OFFICER,

                Defendants.

------------------------------------

10 Civ. 8427 (LAP) (DCF)

**MEMORANDUM OPINION AND ORDER**

LORETTA A. PRESKA, Chief United States District Judge:

    This is one of several actions Cesar Mateo ("Mateo"), a prisoner currently incarcerated at Sing Sing Correctional Facility ("Sing Sing"), has brought *pro se* against various prison officials under 42 U.S.C. § 1983 ("Section 1983"). In this case, Mateo is suing two employees of the New York State Department of Correctional Facilities ("DOCS"): Corrections Sergeant Tracy Alexander ("Alexander") and Corrections Officer Jeffrey Erns ("Erns"). Both defendants worked at the Green Haven Correctional Facility ("Green Haven") while Mateo was incarcerated there from 2003 to 2008. Mateo raises claims of harassment and retaliation against Erns and supervisory liability against Alexander.

1

Mateo first filed these claims against Erns and Alexander in 2008 in the Northern District of New York. (*Mateo v. Alexander*, No. 08-0881 (NAM) (N.D.N.Y. filed Aug. 18, 2008), Compl.) Mateo's case was subsequently transferred here because the complaint's allegations involved incidents at Green Haven, which is in this district. (*Mateo v. Alexander*, No. 08-0881 (NAM) (N.D.N.Y. filed Aug. 18, 2008), Order dated Aug. 26, 2008.) This Court subsequently dismissed Mateo's complaint without prejudice for failure properly to exhaust his administrative remedies before filing suit. *Mateo v. Alexander*, No. 08 Civ. 8797(RJH)(DCF), 2010 WL 431718 (S.D.N.Y. 2010).

Mateo refiled his claims against Alexander and Erns on November 8, 2010 with proof of administrative exhaustion, resulting in the instant action. On May 9, 2011, defendants moved to dismiss the complaint in its entirety. On May 12, 2011, Mateo filed an affirmation in opposition to the motion, and on June 28, 2011, defendants replied. For the reasons that follow, the Court grants defendants' motion.

**BACKGROUND**

For purposes of this motion, the Court takes as true the following facts.

Mateo's claims stem from three incidents that allegedly occurred in 2008. In the first, on June 16, 2008, while Mateo

2

was being moved from the A-Block housing unit to the F-Block housing unit, defendant Erns "belligerently approached" Mateo, "looked at [his] property," and said Mateo had "too much 'shit.'" (Compl. ¶ 6.) Erns then searched Mateo's property, without his permission and in violation of "established procedure," and confiscated items of Mateo's property. (*Id.*) Erns also leveled a few unfriendly words at Mateo, like "shut that fuck up or I will write you a ticket for interfering with the search" and "Jackass . . . Who complaint [sic] too much . . . ." (*Id.*) Mateo filed a grievance that day but it "was not processed"; he filed a second grievance a few days later which was processed and fully appealed. (*Id.* ¶¶ 6, 10.)

The second incident occurred on June 21, 2008, when Mateo expressed an "urgent need to used [sic] a toilet room to defecate." Erns made Mateo wait "a long period of time" to use the toilet, to the point that Mateo was "feeling sick." (*Id.* ¶ 7.) While he was waiting for permission to use the toilet, Mateo heard Erns tell co-workers that Mateo "is the inmate who wrote the grievance against me," implying that Erns' actions were retaliatory. (*Id.*) Mateo later filed a grievance, which was processed and fully appealed. (*Id.* ¶ 10.)

Finally, on August 10, 2008, Erns again made Mateo wait "a long period of time" to enter his assigned cell and to use a toilet. (*Id.* ¶ 8.) Mateo was eventually forced to ask Erns for a

3

"plastic bag and toilet tissue to defecate" because Erns would not allow him access to a toilet; Erns responded by saying no but eventually allowed Mateo to use the toilet in his cell. (*Id.*) According to the complaint, defendant Alexander witnessed the situation and failed to stop it. (*Id.* ¶ 9.) The same day Mateo filed a grievance against Erns and Alexander, which was processed and fully appealed. (*Id.* ¶ 10.)

The instant action was brought pursuant to 42 U.S.C. § 1983. (*Id.* ¶ 1.) It seeks orders of protection and separation against Erns and Alexander, an order directing Erns to stop harassing and retaliating against Mateo, an order directing Alexander to "exercise reasonable supervisory judgment to intervene," declaratory relief that Erns acted unlawfully in "harassing and retaliating against" Mateo, and damages of $10,000 plus the filing costs of this action. (*Id.* ¶ 14.)

## DISCUSSION

### I. Standard of Review on a Motion to Dismiss

On a rule 12(b)(6) motion to dismiss, the Court accepts the complaint's allegations as true and draws all reasonable inferences in the plaintiff's favor. *In re DDAVP Direct Purchaser Antitrust Litigation*, 585 F.3d 677, 692 (2d Cir. 2009). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on

its face." *Starr v. Sony BMG Music Entertainment*, 592 F.3d 314, 321 (2d Cir.2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). If the factual averments permit no reasonable inference stronger than the "mere possibility of misconduct," the complaint should be dismissed. *Starr*, 592 F.3d at 321 (quoting *Iqbal*, 129 S.Ct. at 1950). Thus, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). In applying this standard of facial plausibility, the Court takes all "factual allegations to be true and draw[s] all reasonable inferences in the plaintiff's favor. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir.2009). But the Court does not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Iqbal*, 129 S.Ct. at 1949.

Because "[p]ro se plaintiffs might not have the legal ken of attorneys," *Springs v. Board of Education*, No. 10 Civ. 1243, 2010 WL 4068712, at *2 (S.D.N.Y. Oct. 14, 2010), they are held to less stringent pleading standards. *Erickson v. Pardus*, 551

5

U.S. 89, 94 (2007). "The court must construe complaints filed by pro se litigants liberally and interpret them to raise the strongest arguments that they suggest." *Fehrlin v. Liebowitz*, No. 10 Civ. 5027, 2010 WL 4844395, at *1 (S.D.N.Y. Nov. 29, 2010).

## II. Relief Requested

Mateo has asked for injunctive relief and monetary damages against both defendants. However, Mateo cannot sue Erns and Alexander for injunctive relief, because Mateo is no longer incarcerated in Green Haven. An inmate's transfer out of a facility moots any claims he has for injunctive relief against officials of that facility. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006). Accordingly, only Mateo's claim for damages is properly before this court.

Mateo's complaint further indicates that he seeks damages against the defendants in both their official and individual capacities. The defendants, however, may not be sued for damages in their official capacities. The Eleventh Amendment bars lawsuits by a citizen of a state against that state or its agencies, absent the state's consent or a statutory waiver of immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). It is well settled that Congress did not intend to abrogate sovereign immunity when it enacted Section 1983. *See Quern v. Jordan*, 440 U.S. 332, 343-44. Thus, to the

6

extent Mateo is suing the defendants for damages in their official capacities, his claims are barred. *See Davis v. New York*, 316 F.3d 93, 101 (2d Cir.2002) (affirming dismissal of Section 1983 claims for damages against state officials in their official capacities on Eleventh Amendment grounds). The Court construes Mateo's damages claims as claims against the defendants in their individual capacities, which are not barred by the Eleventh Amendment. *See Farid v. Smith*, 850 F.2d 917, 921 (2d Cir.1988).

### III. Retaliation Claims

Mateo alleges that Erns retaliated against him by verbally harassing him, searching his personal property, and confiscating his property (the June 16, 2008 incident), and by verbally harassing him and making him wait to use the bathroom (the June 21, 2008 and August 10, 2008 incidents), all in retaliation for filing grievances.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). The Second Circuit "has held that retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of

7

grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983." *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir.1996). However, while "the scope of conduct that can constitute actionable retaliation in the prison setting is broad, it is not true that every response to a prisoner's exercise of a constitutional right gives rise to a retaliation claim." *Dawes v. Walker*, 239 F.3d 489, 492-93 (2d Cir. 2001), *overruled sub nom. on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) *as recognized by Phelps v. Kapnolas*, 308 F.3d 180, 187 n.6 (2d Cir. 2002). "To defeat summary judgment on his First Amendment retaliation claim," a plaintiff is "required to provide evidence that (1) his speech was constitutionally protected, (2) [an official] took an adverse action against him, and (3) there was a causal relationship between the protected speech and the adverse action." *Williams v. Temple*, 349 Fed.Appx. 594, 596 (2d Cir. 2009) (citing *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir.2003)).

An "adverse action" is "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003). Actions below this threshold are deemed *de minimis* and outside the ambit of actionable First Amendment retaliation. *Davidson v. Chestnut*, 193 F.3d 144, 150 (2d Cir. 1999) (per curiam). The "test is objective, not

8

subjective, and must be so, since the very commencement of a lawsuit would otherwise be dispositive on the issue of chilling." *Davidson v. Bartholome*, 460 F.Supp.2d 436, 447 (S.D.N.Y.2006). Because retaliation claims are easily fabricated, the courts must "examine prisoners' claims of retaliation with skepticism and particular care," *Colon*, 58 F.3d at 872, requiring "detailed fact pleading . . . to withstand a motion to dismiss." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). Wholly conclusory claims of retaliation "can be dismissed on the pleadings alone." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir 1996).

The Court finds that none of the actions pled by Mateo constitute an "adverse action" for the purposes of his retaliation claims.

Verbal Harassment

"The Second Circuit has held that '[i]nsulting or disrespectful comments directed at an inmate' generally do not rise to the level of conduct that would deter an individual from exercising his or her constitutional rights." *Battice v. Phillip*, No. CV-04-669 (FB)(LB), 2006 WL 2190565, at *7 (E.D.N.Y. Aug. 2, 2006) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir.2003)); *see also Dawes*, 239 F.3d at 489 ("Certain means of retaliation may be so de minimis as not to inhibit or punish an inmate's right of free speech. Many verbal responses

9

by officials of resentment or even ridicule would fall into this safe harbor of permitted responses.") (internal citations and quotations omitted). None of Ern's alleged comments rises beyond the level of "insulting," "disrespectful," or "hostile." *Davis v. Goord*, 320 F.3d at 353. As such, they cannot support a retaliation claim. *See also Dawes*, 239 F.3d at 489 ("[P]risoners may be required to tolerate more . . . than average citizens, before a retaliatory action taken against them is considered adverse.") (internal alterations and citation omitted).

Property search

The Second Circuit has not addressed whether a cell search[1] can constitute an adverse action for purposes of a First Amendment retaliation claim. *Battice*, 2006 WL 2190565, at *7 (E.D.N.Y. Aug. 2, 2006). Nevertheless, many district courts in this circuit have concluded that a cell search is insufficient to support such a claim. *See Salahuddin v. Mead*, No. 95 Civ. 8581(MBM), 2002 WL 1968329, at *5 (S.D.N.Y. Aug. 26, 2002) (collecting cases); *Battice*, 2006 WL 2190565, at *7 (collecting cases). These courts have reasoned under *Hudson v. Palmer*, 468 U.S. 517 (1984) that a search of an inmate's cell, even for retaliatory reasons, does not implicate a constitutional right,

---

[1] Plaintiff alleges that his property was searched *en route* to a new cell assignment. Such a search is tantamount to a cell search conducted after transfer, in that the search targets the same property.

10

because a prisoner has no reasonable expectation of privacy in his or her prison cell. *Battice*, 2006 WL 2190565, at *7.

In this case, because Mateo had no expectation of privacy in his effects at the time of his June 16, 2008 transfer from A-Block to F-Block, Erns's search does not constitute an "adverse action." Despite Mateo's characterization, the Court finds nothing capricious or unreasonable about a search of an inmate's property by a corrections officer during a cell reassignment.

Mateo also claims that Erns retaliatorily confiscated property that Erns "considered contraband," despite other corrections officers having previously identified such property as permitted (Compl. Ex. A). But Mateo fails to specify further the nature of this property in his grievance or complaint, and the Central Office Review Committee ("CORC") does not mention the property in its grievance acceptance, so the Court has no way of determining whether such property was in fact contraband. Mateo's claims for retaliatory confiscation are thus "wholly conclusory" and subject to dismissal. *Graham v. Henderson*, 89 F.3d at 79.

Bathroom Delays

Mateo alleges that Erns twice made him wait to use the bathroom. As for the June 21, 2008 incident, Mateo only alleges that he waited "a long period of waiting time." (Compl. Ex. B.) The CORC, in investigating his grievance, concluded that the

11

wait was "approximately 15 minutes." (*Id.*) Mateo has attached the CORC's statement to his complaint and does not contravene their conclusion in this respect. As for the August 10, 2008 incident, although Mateo alleges that he "waited over an hour to return to his assigned cell from the time [he] left the administration control room." (Compl. Ex. C), he states in his grievance that two "long period[s] of time" had passed *after* he left the administration control room but *before* he first asked to go to the bathroom. (*Id.*) His complaint, carefully read, does not contradict the conclusion that he waited before requesting bathroom access and the CORC's investigation appropriately concluded that the total delay could not have been more than 35 minutes.

The temporary deprivation of the right to use the toilet, in the absence of serious physical harm or a serious risk of contamination, does not rise to the level of an objective constitutional violation. *See Whitted v. Lazerson*, No. 96 Civ. 2746(AGS), 1998 WL 259929, at *2 (S.D.N.Y. 1998) (denying prisoner's claim of cruel and unusual punishment where prisoner stated that he was once made to wait "damn near hour [sic] and a half" without use of the toilet, at which point he urinated in his pants). Even the absence of a working toilet in one's prison cell for approximately ten hours, absent an allegation that the prisoner risked contamination by contact with human waste, "does

12

not rise to the level of cruel and unusual punishment." *Odom v. Keane*, No. 95 Civ. 9941 (SS), 1997 WL 576088, at *4-5 (S.D.N.Y. Sept.17, 1997).

An act, of course, need not rise to the level of a constitutional violation to be considered an "adverse action" for a retaliation claim. *See Dawes*, 239 F.3d at 491. The Court recognizes that the cumulative effect of repeated – albeit individually permissible – acts could nevertheless dissuade someone from filing grievances, and thus constitute an "adverse action." *See, e.g., Harrison v. Smith*, No. C 08-4123 SI (pr), 2010 WL 532393, at *1 (N.D.Cal. 2010). No case in this Circuit or elsewhere appears to have established how many repeated denials of bathroom access might constitute an adverse action. But the Court concludes that the two incidents in this case, each of which delayed Mateo's bathroom access for no more than an hour, would not "deter a[n] . . . individual of ordinary firmness from exercising his or her constitutional rights." *Davis v. Goord*, 320 F.3d at 353. Such acts are "simply *de minimis* and therefore outside the ambit of constitutional protection." *Id.* (citing *Dawes*, 239 F.3d at 493); *c.f. Boles v. Lewis*, 2008 WL 4534043, at *8 (W.D. Mich. 2008) (entertaining retaliation claim by prisoner made to wait to use the bathroom until urinating on himself in public, and distinguishing such claim from a simple averment of "being made to wait to use the

13

bathroom until after count."); *Curry v. Morring*, No. C 09-3751 MHP (pr), 2010 WL 3490238, at *2 (N.D.Cal. 2010) (refusing to dismiss retaliation claim where prisoner with "chronic diarrhea" was refused access to a clean toilet with toilet paper).

In sum, because none of the actions allegedly taken by Erns or observed by Alexander would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights," *id.*, Mateo's retaliation claims fail as a matter of law and are dismissed.

### III. Harassment Claims

Mateo also alleges that Erns's actions constitute "harassment" under 42 U.S.C. § 1983. As a challenge to Mateo's "treatment . . . in prison and the conditions under which he is confined," the Court treats Mateo's claims as arising under the Eighth Amendment's proscription of unnecessary and wanton infliction of pain. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993). Under the Eighth Amendment, prison officials may not use excessive force against prisoners, and they must maintain "humane" prison conditions. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). But not every injury to a prisoner is a constitutional one; a plaintiff alleging an Eighth Amendment violation must show that it is objectively "sufficiently serious," which means that the prisoner must not be denied "the minimal civilized

14

measure of life's necessities" and that conditions must be more than just "restrictive and even harsh." *Id.* at 833-34.

Applying the stringent standards of Eighth Amendment law to the allegations, it is clear that none of Ern's actions violated Mateo's constitutional rights. Ern's verbal harassment claims fall far short of the degree of seriousness demanded by the Eighth Amendment and show no "unnecessary and wanton infliction of pain" by prison officials. *See Rivera v. Goord*, 119 F.Supp.2d 327, 342 (S.D.N.Y.2000) ("To the extent that the complaint can be read to assert an Eighth Amendment cruel and unusual punishment claim ... based on alleged verbal harassment of plaintiff, such conduct is not actionable under § 1983."); *see also Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir.1986)). Ern's search of Mateo's property incident to his intake likewise raises no constitutional violation because as noted above, a prisoner has no reasonable expectation of privacy in his prison cell. *Battice*, 2006 WL 2190565, at *7; *Hudson*, 468 U.S. 517; *see also Willis v. Artuz*, 301 F.3d 65, 69 (2d Cir. 2002) ("One of the incidents of confinement for a convict is the loss of privacy, which serves the legitimate purpose of retribution as well as the institutional security needs of the prison system. We therefore hold that "society is not prepared to recognize as legitimate any subjective expectation of privacy that a [convict] might have in his prison cell.") (citing *Hudson*, 468

15

U.S. at 526). And finally, an hour's delay in accessing the bathroom, in the absence of serious physical harm or a serious risk of contamination, is shorter than delays that other courts in this Circuit have not found to be actionable under § 1983. *See Whitted*, 1998 WL 259929, at *2; *Odom*, 1997 WL 576088, at *4-5.

Because none of the actions allegedly taken by Erns was sufficiently serious to violate the Eighth Amendment, Mateo's harassment claims fail as a matter of law and are dismissed.

Likewise, because the court has found no liability by Erns, there can be no supervisory liability against Alexander. All claims against Alexander are likewise dismissed.

## CONCLUSION

For the foregoing reasons, defendants' Motion **[8]** to Dismiss is GRANTED. The Clerk of the Court shall mark this action closed and all pending motions denied as moot.

SO ORDERED.

Dated:   New York, New York
         March 13, 2012

*Loretta A. Preska*
LORETTA A. PRESKA
CHIEF U.S.D.J.

16